UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:                                              CASE NO.

**LETITIA ANDREA LEWIS**                            05-00826-5-ATS

    DEBTOR

**ORDER ALLOWING OBJECTION TO CONFIRMATION**

The matter before the court is the objection to confirmation filed by Coastal Federal Credit Union ("CFCU"). A hearing took place on June 7, 2005, in Raleigh, North Carolina.

Letitia Andrea Lewis filed a petition for relief under chapter 13 of the Bankruptcy Code on March 7, 2005. Ms. Lewis purchased a 2004 Ford Freestar on November 21, 2004, 106 days before she filed her petition. The purchase price, which was financed by CFCU, was $35,418. With a service contract and GAP insurance, Ms. Lewis borrowed a total of $38,973.56 from CFCU. Though the balance owed is $37,684.04, Ms. Lewis proposes to "cram down" CFCU to a secured claim of $19,175, payable at the trustee's rate of interest. CFCU agrees that the trustee's interest rate is appropriate, but it contends that the effort to reduce the value of the secured claim is in bad faith.

Ms. Lewis testified that she has been rebuilding her credit on the heels of a chapter 7 filing in 2002. She was able to purchase a 2002 Mazda, but was commuting from Fayetteville to Raleigh and accumulated 150,000 miles on the Mazda in only 3 years. She needed a new car, and

went to a Ford dealership to inquire about purchasing a Ford Focus. She notified the salesperson that she needed a reliable car, but that she needed to maintain her payments around $370 with a maximum cap of $479 per month.[1]  The salesperson said he could not help her, so she left.  Over the next few days, the salesperson called Ms. Lewis several times and said the dealership had a new program with CFCU, and that they could sell her a car and keep her payments at $479.  Ms. Lewis was satisfied with that payment amount, and returned to the dealership where the salesman explained that Ms. Lewis needed to purchase a vehicle with a high rebate to qualify for the program with CFCU.  He directed Ms. Lewis to the Ford Freestar, which carried a $5,000 rebate.  Ms. Lewis signed a document that provided she would have a monthly payment of $479.

The next day, Ms. Lewis returned to pick up the car and expressed some hesitation over the purchase to the dealership.  According to Ms. Lewis, the representative pointed to some fine print in the purchase contract and stated that this was a "done deal."  Ms. Lewis understood that she could not rescind the transaction at that point.  Ms. Lewis then contacted her insurance agent to adjust her car insurance, and her agent expressed concern that the purchase price of the vehicle was too high.  Ms. Lewis did some further investigation and realized that her

---

[1] Ms. Lewis needed to keep her monthly expenses low to qualify for a first-time home buyer's program.

2

monthly payment was in fact $688, and she could not qualify for the home buyer's program.  She was also unable to refinance the vehicle, because there was substantial negative equity in the van once it left the dealership.

On cross-examination, the terms of the CFCU plan became clear. Ms. Lewis received a $5,000 rebate on the purchase of the van.  The rebate was deposited into a shares account at CFCU, and each month for the first 24 months $209 was to be drafted from the account to make up for the difference between the $688 monthly contract payment and the $479 that Ms. Lewis agreed to pay.  While Ms. Lewis acknowledged that had she gone forward with this transaction as designed she would have received the bargain she reached for two years, she contends that the payments would only have been $479 per month for the first 24 months, and that was not her agreement.  In fact, Ms. Lewis was unable to make the first payment, and the entire first payment was drafted from the shares account.  Ms. Lewis then decided to leave enough money in the account to make the first 4 payments in full, but she withdrew approximately half the rebate funds and used them for personal expenses. Accordingly, Ms. Lewis made no payments on the vehicle from her own funds prior to filing her bankruptcy petition, and no funds remain in the shares account that could make up the difference between Ms. Lewis's $479 and the $688 payment.

Ms. Lewis contends that she finds herself in this predicament not due to her bad faith, but due to a misleading financing program and a high-pressure salesman who talked her into a more expensive vehicle than she could afford.  She contends that a cram down is fair under these circumstances.

It is clear that Ms. Lewis succumbed to high-pressure sales tactics and purchased a bigger and more expensive vehicle than she needed.  However, these circumstances are not sufficient to justify a substantial cram down of the lender.  A cram down in this case is not fair to CFCU.  The $5,000 is no longer available to make up the payment differential, and the creative financing has actually harmed the creditor in this situation.  Ms. Lewis is left with two options: she may pay CFCU's full secured claim at the trustee's lower interest rate and adjust the service contract purchased with the vehicle, or she may surrender the vehicle, shedding the debt but also leaving her without a car.  Neither option may appeal to the debtor, but the debtor's proposal does not protect CFCU.

Based on the foregoing, CFCU's objection to confirmation is **ALLOWED**.

**SO ORDERED.**

**DATED: June 9, 2005**

_____
A. Thomas Small
United States Bankruptcy Judge